## In re TABLEWARE ANTITRUST LITIGATION.

**This Document Relates to All Actions.**

No. C–04–3514 VRW.

United States District Court, N.D. California.

March 13, 2007.

Alex C. Turan, Henry A. Cirillo, Michael P. Lehmann, Furth Lehmann & Grant LLP, Richard Alexander Saveri, Cadio Zirpoli, Guido Saveri, Lisa Saveri, Saveri & Saveri Inc., Craig C. Corbitt, Zelle, Hofmann, Voelbel, Mason & Gette LLP, Joseph M. Alioto, Alioto Law Firm, San Francisco, CA, for Plaintiffs.

Jeffrey A. Levee, Jones Day, Los Angeles, CA, Phillip Aaron Proger, Toby G. Singer, Jones Day, Washington, DC, Thomas Demitrack, Jones Day, Cleveland, OH, Catherine E. Sison, Ronald J. Dolan, The May Department Stores Company Office of Legal Counsel, St. Louis, MO, David Dong-In Sohn, Skadden, Arps, Slate, Meagher & Flom LLP Tammy Albarran, Morrison & Foerster, Jeffrey C. Hallam, San Francisco, CA, Aamy E. Richardson, Patrick Pearse O'Donnell, Joseph Collins Cavender, Justin Emerson Dillon, Harris, Wiltshire, Grannis LLP, Washington, DC, Dawn Michelle Irizarry, Proskauer Rose LLP, LA, CA, for Defendants.

## ORDER

WALKER, Chief Judge.

Plaintiffs in these consolidated cases allege that May Department Stores Co. ("May") and Federated Department Stores, Inc ("Federated"), which operate department stores across the United States, and Lenox, Inc ("Lenox") and Waterford Wedgwood, USA ("Waterford"), both of which produce fine tableware sold in the United States, conspired with one another to boycott Bed, Bath and Beyond, a competitor of May and Federated. Plaintiffs bring suit under § 1 of the Sherman Act, alleging that defendants' conduct is condemned *per se*. By separate order, the court has denied summary judgment for Federated and May, granted summary judgment for Waterford and set the matter for trial on June 11, 2007.

On November 17, 2006, plaintiffs moved for class certification. Doc # 116; Doc # 128. For reasons discussed below, the court CERTIFIES plaintiffs' class pursuant to FRCP 23(b)(3) and GRANTS plaintiffs' request for appointment of counsel pursuant to FRCP 23(g).

### I

Because the court's summary judgment order addressed many of the underlying issues presented here, the court assumes familiarity with that order and the definition of terms therein; the court will confine its discussion in this order to further analysis mandated by FRCP 23.

Pursuant to FRCP 23, plaintiffs request certification of the following class:

All persons who purchased in the United States from Federated or May Department Stores Lenox Tableware during the period October 1, 2001 through October 31, 2003 or Waterford Wedgwood Tableware during the period October 1, 2001 through April 30, 2005 (the "Class Period"). Excluded from the Class are all employees, officers, directors or agents (including attorneys) of any defendant, as well as any judge, justice or judicial officer presiding over this matter, and each such person's immediate family.

"Lenox Tableware" includes Lenox, Gorham and Kate Spade brand dinnerware (china), crystal stemware, glassware, flatware (sterling and stainless), and giftware.

"Waterford Wedgwood Tableware" includes Waterford, Marquis by Waterford, Wedgwood, Vera Wang, Johnson Brothers, and Franciscan brand dinnerware (china), crystal stemware, glassware, flatware (sterling and stainless), and giftware.

"Federated Department Stores" includes Macy's and Bloomingdale's, Rich's, Lazarus, Goldsmith's, Burdine's and the Bon Marche.

"May Department Stores" includes May, Famous–Barr (including L.S. Ayers and The Jones Store), Filene's, Foley's, Hecht's, Kaufmann's, Meier & Frank, Robinsons–May and Strawbridge's.

Doc # 124 at 3–4.

## A

FRCP 23(a) sets forth the preliminary requirements to certifying a class action: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class and (4) the representative parties must be able fairly and adequately to protect the interests of the class. FRCP 23(a); see also, e g, *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir.2001); *Walters v. Reno*, 145 F.3d 1032, 1045 (9th Cir.1998).

■ "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (quoting *Miller v. Mackey Intl.*, 452 F.2d 424 (5th Cir.1971)) (internal quotation marks omitted). "A Rule 23 determination is wholly procedural and has nothing to do with whether a plaintiff will ultimately prevail on the substantive merits of its claim." *Little Caesar Enter. v. Smith*, 172 F.R.D. 236, 241 (E.D.Mich.1997). On a motion for class certification, the court "is bound to take the substantive allegations of the complaint as true." *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir.1975). Nonetheless, the court is "at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir.1992).

■ The court further notes that class actions play a particularly vital role in the private enforcement of antitrust actions. See *Brown v. Pro Football Inc.*, 146 F.R.D. 1, 4 (D.D.C.1992) ("the framers of Rule 23 seemed to target such cases as this [antitrust action] as appropriate for class determination"); *In re Plastic Cutlery Antitrust Litig*, 1998 WL 135703 at *1, 1998 U.S. Dist LEXIS 3628 at *2 (ED Pa 1998) ("Class actions are widely-recognized as being particularly appropriate for the litigation of antitrust cases alleging a price-fixing conspiracy * * *"); *In re Playmobil Antitrust Litig.*, 35 F Supp 2d 231, 238 (E.D.N.Y.1998) ("antitrust claims are well suited for class actions"). Accordingly, in antitrust cases, courts tend to favor class certification when in doubt. See *Playmobil*, 35 F Supp 2d at 239 ("Because of the important role that class actions play in the private enforcement of antitrust actions, courts resolve doubts in favor of certifying the class."); *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir.1985) ("The interests of justice require that in a doubtful case * * * any error, if there is to be one, should be committed in favor of allowing a class action.").

■ The court first assesses whether the FRCP 23(a) requirements of numerosity, commonality, typicality and adequacy are met. Under FRCP 23(a)(1), the class be "so numerous that joinder of all members is impracticable." "A finding of numerosity may be supported by common sense assumptions, and it is especially appropriate in antitrust actions brought under Rule 23(b)(3)." *In re Playmobil Antitrust Litig.*, 35 F.Supp.2d 231, 239 (E.D.N.Y.1998) (citing 4 Newberg on Class Actions, § 18–03, n 17 (2d ed 1985)). Plaintiffs estimate that their proposed class "contains thousands of members," Doc # 124 at 13, and assert that joinder would be impracticable because class members are geographically dispersed throughout the United States. The court agrees and finds that the

numerosity requirement of Rule 23(a)(1) is satisfied.

■ The court also concludes that the commonality requirement is met. To satisfy FRCP 23(a)(2), "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998). Plaintiff alleges, inter alia, that all class members paid supracompetitive prices for tableware due to defendants' horizontal agreement to boycott Bed, Bath & Beyond in violation of § 1 of the Sherman Act. Doc # 18, ¶¶ 23–25. Common issues of law and fact include whether such an agreement existed and, if so, whether it affected the price plaintiffs paid for tableware at defendants' stores. Accordingly, all class members' claims share these and other common questions of law and fact.

■ Along these lines, the court concludes that the named plaintiffs' claims appear to be typical of the putative class. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon,* 976 F.2d at 508 (internal quotation omitted). See also *Estate of Jim Garrison v. Warner Brothers et al,* 1996 WL 407849 at *2 (C.D.Cal.1996) ("Typicality in the antitrust context will be established by plaintiffs and all class members alleging the same antitrust violation by the defendants").

■ Here, the claims of representatives Young and Galindo and the claims of the class members arise from the same event: they claim injury from an alleged agreement between Federated and May to boycott Bed, Bath & Beyond via their purchase of tableware at an artificially inflated price. The fact that named plaintiffs purchased different types of tableware products at different prices from those of the absent class members does not render their claim atypical. See *In re Rubber Chemicals Antitrust Litig.,* 232 F.R.D. 346, 353 (N.D.Cal.2005) ("That some members of the proposed class may

have received discounts * * * such that they did not pay the prices set does not counsel against class certification."). Nor is it consequential that named plaintiffs did not purchase Lenox tableware; the horizontal nature of the alleged boycott means that named plaintiffs were harmed by the same overarching conspiracy as those in the class who purchased Lenox goods. See *In re Bulk [Extruded] Graphite Prod. Antitrust Litig.,* 2006 WL 891362 at *6 (D.N.J.2006) (certifying class in which named plaintiffs represented only one particular customer category of three because prices of all categories were allegedly inflated by the same horizontal price-fixing conspiracy). Accordingly, the court finds that the claims of named plaintiffs are typical of those of the class.

■ Finally, FRCP 23(a)(4) provides that class representatives—both named plaintiffs and their counsel—must "fairly and adequately protect the interests of the class." Legal adequacy turns on two questions: "(1) do named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon,* 150 F.3d at 1020.

■ Regarding the first inquiry, the court cannot detect—and defendants do not offer—a potential conflict of interest that exists between the representatives and class members. Members of the class were allegedly overcharged for tableware and have a mutual and coterminous interest in establishing defendants' liability and recovering damages. Similarly, a review of the litigation heretofore gives the court no reason to doubt that plaintiffs' counsel will act vigorously on behalf of the class.

■ Because class representatives serve as a guardian of the interests of the class, the representatives must have some minimal familiarity with the litigation, see, e.g., *Burkhalter Travel Agency v. MacFarms Int'l, Inc.,* 141 F.R.D. 144, 153–53 (N.D.Cal.1991), although a detailed understanding of the theories and facts of the case is not required. See *In re Playmobil Antitrust Litig.,* 35 F.Supp.2d 231, 243 (E.D.N.Y.1998) (repre-

sentatives had "an adequate layman's understanding" of the case). Notwithstanding defendants' nitpicking, both Young and Galindo understand the underlying theory of this case: that plaintiffs overpaid for tableware due to the exclusion of Bed, Bath & Beyond from the market. See Doc. # 206, Ex. 2 (Galindo depo) at 9:17–10:23, 12:24–14:12; Ex 12 (Young depo) at 13:3–7; 14:6–16:10; 38:5–19; 40:21–42:4; 58:2–12. Accordingly, the court finds that class representatives Young and Galindo—along with their counsel—adequately represent the class.

 Courts have also read an additional threshold requirement into FRCP 23(a) that does not neatly fall under any of the four listed prerequisites: to certify a class, there must be some evidence that a class exists and that it may be defined with reasonable specificity. *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir.1981); *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 319 (C.D.Cal.1998); *In re Copper Antitrust Litig.*, 196 F.R.D. 348 (W.D.Wis.2000) (denying certification in part because plaintiffs could not define the class in a way that would inform copper purchases whether they were in or out of the class). See also *Wagner v. Central La. Electric Co. Inc.*, 99 F.R.D. 279, 281 (E.D.La.1983) (the existence of a class is an "implied prerequisite"). A proper class definition is essential because it "identifies the persons (1) entitled to relief, (2) bound by the judgment, and (3) entitled to notice in a Rule 23(b)(3) action." *Gustafson v. Polk County, Wis.*, 226 F.R.D. 601, 607 (W.D.Wis.2005).

 The proposed class is not ascertainable, defendants charge, because the definition of "tableware" is too generic and imprecise. Defendants fault this term for encompassing thousands of items, including "casual" tableware and "giftware," Doc. # 151 at 5–6, 10–11, 13. The inclusion of so-called casual tableware allegedly raises a host of issues because Bed, Bath & Beyond may have sold this kind of tableware before the boycott in June 2001. Adding giftware to the class definition allegedly renders the case unmanageable because Federated sells two hundred thousand items that it considers to be giftware, approximately 45% of which is manufactured by Waterford and Lenox. These items include candlesticks, picture frames, vases, bowls, cake stands and utensils. Doc # 154, ¶¶ 7–8.

 Neither of these inclusions renders the proposed class unascertainable. A class definition is "definite enough" to satisfy FRCP 23(a)(1) if it "is administratively feasible for the court to ascertain whether an individual is a member." *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 319 (C.D.Cal.1998). Yet defendants' complaint regarding casual tableware does not even concern administrative feasibility; it deals with the provability of damages. As such, this theory is appropriately presented in a motion for summary judgment or directed verdict, not one for class certification.

The inclusion of giftware purchasers in the proposed class gives the court pause due to the sheer number of purchasers it implicates. But defendants fail to explain why the term giftware is so amorphous that it would preclude the court from ascertaining whether an individual is a member of the proposed class. The actual dispute—as the court understands it—concerns whether and to what extent giftware falls within the ambit of the alleged boycott; this is a disputed issue better resolved at trial.

Neither *Mueller v. CBS*, 200 F.R.D. 227, 233–34 (W.D.Pa.2001), nor *In re Copper Antitrust Litig.*, 196 F.R.D. 348, 350 (W.D.Wis. 2000) undermines the court's conclusion on this issue. In *Mueller*, the plaintiffs sought to certify a class consisting of all of the defendant's former employees over forty years of age who had been terminated in order "to interfere with their benefits." 200 F.R.D. 227, 233–34. The court denied certification, explaining that it would be necessary to hold a series of individualized causation hearings to determine which of the employees had been fired in order to prevent them from receiving retirement benefits. In *In re Copper Antitrust Litig.*, 196 F.R.D. 348, 350 (W.D.Wis.2000), the district court denied certification to a proposed class consisting of "all copper or metals dealers * * * that purchased physical copper" during a specified time period "at prices expressly related to

LME or Comex copper future prices." The court observed that this definition did not "communicat[e] to copper purchasers what they [would] need to know to decide whether they [were] in or outside the proposed class" because plaintiffs failed to explain the meaning of the terms "copper or metals dealers," "physical copper" and "expressly related to." *Id.* at 358–60.

Having reviewed plaintiffs' class definition, the court is satisfied that individuals would be able to determine, simply by reading the definition, whether they are members of the proposed class. Unlike in *Copper Antitrust*, none of the terms in the definition requires further clarification. And unlike the proposed definition in *Mueller*, plaintiffs' definition would not require the court to hold individualized hearings to decide whether a particular individual fell within the scope of the definition. Accordingly, the court concludes that plaintiffs have proposed an ascertainable class.

### B

■ In addition to satisfying the Rule 23(a) prerequisites, the class must also satisfy one of the three alternatives listed under Rule 23(b). *Walters*, 145 F.3d at 1045. Plaintiffs bear the burden of demonstrating that they have satisfied all four FRCP 23(a) elements and one FRCP 23(b) alternative. *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir.2001). Failure to carry the burden on any FRCP 23 requirement precludes certifying a class action. *Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 152 (N.D.Cal.1991) (Jensen, J) (citing *Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668 (9th Cir.1975)).

Plaintiffs have opted to proceed under FRCP 23(b)(3), which authorizes the court to certify a class action if "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and * * * a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FRCP 23(b)(3). See also *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir.2001). The matters pertinent to such a finding include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action. *Id.*

The objective behind the two requirements of Rule 23(b)(3) is the promotion of economy and efficiency. See FRCP 23(b)(3) advisory committee notes. When common issues predominate, class actions achieve these objectives by minimizing costs and avoiding the confusion that would result from inconsistent outcomes. *Id.*

■ To predominate, common questions "need not be dispositive of the litigation." Rather, the court must identify issues involved in the cases and determine which of them "are subject to generalized proof * * * applicable to the class as a whole" and which must be the subject of proof on behalf of individualized class members. "Because no precise test can determine whether common issues predominate, the court must pragmatically assess the entire action and the issues involved." *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 489 (E.D.Cal. 2006). Courts in antitrust cases, as in other cases, typically evince a greater willingness to certify classes involving individualized damages, as opposed to individualized liability issues. See *Alexander v. QTS Corp.*, 1999 WL 573358, 1999 U.S. Dist LEXIS 11842 (N.D.Ill.1999).

■ Here, the common questions concern whether defendants agreed to boycott Bed, Bath & Beyond and, if so, whether the boycott affected the price plaintiffs paid for tableware. See *In re Master Key Antitrust Litig.*, 70 F.R.D. 23 (D.Conn.1975) (classes certified in case involving horizontal and vertical communications where "the damage claims arise from the horizontal, not the vertical, conduct and evidence of vertical communications would be offered only to demonstrate by implication the existence of a horizontal conspiracy").

To support the proposed class-wide approach, plaintiffs submit a report from Roger Noll, an economist, who avers that he has identified at least three formulae to measure the class-wide impact of the alleged boycott in this case: one that compares the list prices for tableware before, during and after the alleged conspiracy; one that analyzes the retail markup over the wholesale cost of tableware; and one that compares similar products that were not part of the collusive agreement. Doc. # 207, Ex. 17 (Noll report) at 7. Noll concludes that the first approach (so-called "before-and-after") is the most useful here. *Id.* at 8.

A second economist, Paul Liu, performed a regression analysis consistent with Noll's before-and-after approach. Doc. # 207, Ex. 18 (Liu report) at 8. To determine impact, Liu constructed a mark-up specification model based on transactional data produced by defendants that purports to demonstrate a statistically significant decline in Lenox, Wedgwood and Waterford tableware markups at Federated and May following the respective introductions of such tableware at Bed, Bath & Beyond. *Id.*, Ex. 18 at 6–8, 13, 14 & Fig 2. Liu's regression specification shows price declines quantified for Lenox (3.84), Wedgwood (2.14) and Waterford (6.21) as a percentage of cost relative to the baseline. *Id.* at 6–7, 11–16 & Fig. 3. Applying these results to a damage formula (difference between "actual" and "but-for" multiplied by total cost), Liu estimates that the class suffered damages in the amount of $12,301,941 as a result of the boycott. *Id.* at 15–16.

Defendants criticize these two expert reports for failing to account for individual criteria, such as defendants' store locations and their proximity to Bed, Bath & Beyond. Plaintiffs contend that this argument ignores the national structure of the tableware market: Federated and May both adhere strictly to a national pricing formula. Doc. # 207, Ex. 17 at 32. In view of this formula, Noll concludes that "all customers who purchased their products were affected identically by any corporate decision that affected the distribution and prices of their products," *id.* at 32, and that individual damages are not likely to vary substantially among products within a line. *Id.* at 7.

These submissions suffice to show that means exist for proving impact on a class-wide basis, which is all that is required under the authority cited by defendants. The central and common element of this suit is whether defendants agreed to boycott Bed, Bath & Beyond. See *Citric Acid*, 1996 WL 655791 at *6 (common questions include whether there was a conspiracy, whether prices were fixed pursuant to the conspiracy, and whether the prices plaintiffs paid were higher than they should have been). If this element is shown, various exogenous factors may affect the amount of recovery individual plaintiffs may obtain. But this qualification does not militate against class certification; in few class actions is there a simple per capita measure of recovery. *Citric Acid*, 1996 WL 655791, at *6 ("Contentions of infinite diversity of product, marketing practices, and pricing have been made in numerous cases and rejected."). See also *In re Brand Name Prescription Drugs Antitrust Litig.*, 1994 WL 663590 at *4–*5 (N.D.Ill. 1994) (class of 50,000 independent retail pharmacists certified to bring claims against thirty-one drug manufacturers involving hundreds of different drugs). "It is not necessary that plaintiffs show that their expert's methods will work with certainty at this time. Rather, plaintiffs' burden is to present the court with a likely method for determining class damages." *In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 693 (N.D.Ga.1991).

To be sure, the sheer size of the proposed class will engender management problems, but the advantages of class treatment more than compensate for these administrative costs. The modest amount at stake for individual plaintiffs in this case renders individual prosecution impractical; class treatment not only promotes judicial economy, it represents plaintiffs only chance for adjudication. See *Amchem Prods. v. Windsor*, 521 U.S. 591, 616, 117 S.Ct. 2231, 138 L.Ed.2d 689 (quoting with approval Advisory Committee's reference to the desirability of a class action when "the amounts at stake for individuals may be so small that separate suits would be

impractical"). Accordingly, the court finds that common questions of law and fact predominate over individual questions and that class treatment of this matter is superior to any other available means of adjudication.

### III

In sum, the court finds that the FRCP 23(a) requirements of numerosity, commonality, typicality and adequacy are met. The court further finds, pursuant to FRCP 23(b)(3), that common questions of law and fact predominate over individual questions and that class treatment of this matter is superior to any other available means of adjudication. Finally, the court appoints Saveri & Saveri, Inc.; Zelle Hofmann Voelbel Mason & Gette; Furth Lehmann & Grant LLP; The Law Firm of Joseph M. Alioto; and The Law Offices of Randy, Renick as class counsel.

IT IS SO ORDERED.