**Beverly KANAWI, et al., Plaintiffs,**

v.

**BECHTEL CORP., et al., Defendants.**

**No. C 06–05566 CRB.**

United States District Court,
N.D. California.

Oct. 10, 2008.

Daniel V. Conlisk, Heather Lea, Jason P. Kelly, Jerry J. Schlichter, Mark G. Boyko, Matthew Armstrong, Schlichter, Bogard & Denton, St. Louis, MO, Jamie L. Dupree, Martin H. Dodd, Futterman & Dupree LLP, San Francisco, CA, for plaintiffs.

Amy M. Spicer, Andrew Cameron Sullivan, Benjamin Patrick Smith, Christopher M. Ahearn, Donald Patrick Sullivan, Franklin Brockway Gowdy, Jami Wintz McKeon, Lisa Sharon Serebin, Nicole A. Diller, Sacha Marie Steenhoek, Tera Marie Heintz, William James Taylor, Morgan, Lewis & Bockius LLP, Grace A. Carter, Marc Avram Centor, Tammy Lee Kissman, Paul, Hastings, Janofsky & Walker LLP, San Francisco, CA, Ellen L. Perlioni, Morgan, Lewis & Bockius LLP, Dallas, TX, for defendants.

## ORDER

CHARLES R. BREYER, District Judge.

Presently before the Court is Plaintiffs' Renewed Motion for Class Certification. Plaintiffs, Beverly Kanawi and Salvador Aquino, brought this action under ERISA on behalf of all current and former employees of Bechtel Corporation who are participants in the company's 401(k) retirement plan. Plaintiffs advance claims for breaches of fiduciary duty against: (1) the Bechtel Corporation, which established the plan on behalf of its employees; (2) Peggi Knox, who works as Vice President of Retirement Plans at Bechtel; (3) a corporate committee appointed by Bechtel that administers the Plan ("the Committee"); and (4) Fremont Investment Advisors ("FIA"), a corporation that served as the primary advisor and service provider to Bechtel's Plan.

## BACKGROUND

Bechtel offers a 401(k) retirement plan for its employees, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). Third Am. Compl. ¶ 1 (hereinafter "TAC"). The Committee, which comprises several Bechtel officers and employees appointed by the company, administers the Plan. *Id.* ¶ 10. FIA originated from an in-house investment advisory and management

division of Bechtel. *Id.* ¶ 12. It became an independent corporation in 1986. *Id.*

The Bechtel Plan is a defined contribution plan in which separate accounts are maintained for each participant, and the retirement benefits each participant will receive are based on the amount of contributions to the participant's account and the investment performance of those contributions. *See* 29 U.S.C. § 1002(34); TAC ¶ 24. Plan participants have many investment options and exercise control over their individual accounts. *See* Knox Decl. ¶ 3, Ex. B at 6–7.

The Plan operates under the auspices of a Master Trust. *See* TAC ¶ 26. The Master Trust is a legal device that allows multiple ERISA plans to operate together under one corporate umbrella, thereby allowing plan participants to pool their resources and share the costs of running a retirement plan. *See id.* ¶¶ 25–27. Here, the Master Trust administers both Bechtel's Plan and a smaller plan related to another company ("the Becon Plan"), though Bechtel's Plan constitutes the lion's share of the assets managed under the Master Trust. *Id.* ¶¶ 26–27.

Plaintiffs' complaint rests on the theory that Defendants breached their fiduciary duties under ERISA by causing plan participants to incur unnecessary and improper fees in connection with the Plan. *Id.* ¶¶ 33–48. Plaintiffs allege that Defendants engaged in prohibited transactions with FIA. *Id.* ¶¶ 49–52. Plaintiffs further allege that Defendants concealed the true nature of the fees and expenses incurred by the Plan by failing to disclose the details of certain revenue sharing agreements with other related parties who provided services to the Plan. *See generally id.* ¶¶ 77–84. In addition, Plaintiffs allege that Defendants included improper investment options in the Plan. *See id.* ¶¶ 57–70.

Plaintiff Beverly Kanawi worked for Bechtel from 1979 through 1984 and contributed to the Plan during her employment. *See* Kanawi Dep. at 15:11, 32:12–15. Plaintiff Salvador Aquino was employed by Bechtel from 1979 through 1993, from 2002 through 2005, and again from February 2008 to present. *See* Aquino Dep. at 21:13–16, 149:24–150:5. Aquino enrolled in the Plan during each period of employment. *See id.* at 21:9–22:9. Both Plaintiffs became involved in this litigation after reading a newspaper advertisement posted by the Schlichter law firm. *See* Kanawi Dep. at 38:19–40:2; Aquino Dep. at 25:12–26:5, 36:11–12.

On August 27, 2007, the Court denied without prejudice Plaintiffs' motion for class certification, indicating that Plaintiffs could renew their motion when they had ample opportunity for discovery. *See* Aug. 27, 2007 Order. Presently before the Court is Plaintiffs' Renewed Motion for Class Certification, which is hereby GRANTED.

**DISCUSSION**

I. *Legal Background*

Plaintiffs primarily seek relief under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2). That section permits a plan participant to bring an action for relief under 29 U.S.C. § 1109(a). Section 1109 provides that a plan fiduciary who breaches his duty shall be personally liable to "make good to such plan any losses to the plan resulting from each such breach...." 29 U.S.C. § 1109(a). In the alternative, Plaintiffs seek injunctive relief under ERISA § 502(a)(3).

Suits brought under ERISA § 502(a)(2) have historically been brought in a representative capacity on behalf of a plan. *See Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). In *Russell,* the Supreme Court emphasized that the text of § 409(a) characterizes the relevant fiduciary relationship as one "with respect to a plan," and repeatedly identifies the "plan" as the victim of any fiduciary breach. *See id.* at 140, 105 S.Ct. 3085. The Court concluded, "A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id.* at 142, 105 S.Ct. 3085. In *LaRue v. DeWolff, Boberg & Associates, Inc.,* — U.S. ——, 128 S.Ct. 1020, 169 L.Ed.2d 847 (2008), the Supreme Court recognized that, in the defined contribution plan context, a plaintiff may also recover for an injury to

his individual plan under § 502(a)(2). The present action is alleging breach of fiduciary duties that affected all Plan participants, not just a single individual account.

Plaintiffs contend that they qualify for class certification because they aim to recover assets on behalf of the Plan. They seek certification of the following class:

> All persons, *excluding the Defendants and/or other individuals who are or may be liable for the conduct described in this Complaint,* who are or were participants or beneficiaries of the Plan and who are, were or may have been affected by the conduct set forth in this Complaint, as well as those who will become participants or beneficiaries of either Plan in the future.

A motion for class certification involves a two-part analysis. First, the movant must demonstrate that the proposed class satisfies the requirements of Rule 23(a): (1) the members of the proposed class must be so numerous that joinder of all claims would be impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of absent class members; and (4) the representative parties must fairly and adequately protect the interests of the class. Fed. R.Civ.P. 23(a).

Second, Plaintiffs must meet the requirements of at least one of the subsections of Fed.R.Civ.P. 23(b). Plaintiffs primarily argue that they qualify under Rule 23(b)(1), which allows for certification when the prosecution of separate suits by individual class members would create a risk of inconsistent or varying adjudications and establish incompatible standards for Defendants, or when a judgment in one suit would be dispositive of the interests of the other class members who were not parties to the suit.

The party seeking certification must provide facts sufficient to satisfy the requirements of Rule 23(a) and (b). *Doninger v. Pac. Northwest Bell, Inc.,* 564 F.2d 1304, 1308–09 (9th Cir.1977). In turn, the district court must conduct a rigorous analysis to determine that the prerequisites of Rule 23 have been met. *Gen. Tel. Co. v.*

*Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). While the Court's analysis must be rigorous, Rule 23 confers "broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." *Armstrong v. Davis,* 275 F.3d 849, 872, n. 28 (9th Cir.2001).

In *Falcon,* the Supreme Court reiterated the well-recognized precept that " 'the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' " *Falcon,* 457 U.S. at 160, 102 S.Ct. 2364 (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)). Nevertheless, there is "nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

## II. *Rule 23(a) Requirements*

The proposed class satisfies all four of the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation.

### A. *Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). In this case, Form 5500s filed by Defendants with the Department of Labor indicate that the Plan included upwards of 17,000 participants. *See* Boyko Decl. Ex. 8 at P2022. Bechtel does not contest that numerosity is satisfied.

### B. *Commonality*

Commonality focuses on the relationship of common facts and legal issues among class members. *See, e.g.,* 1 H. Newberg, Newberg on Class Actions § 3:10 at 271 (4th ed.2002). The Ninth Circuit noted in *Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir.1998):

Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class. *Id.* at 1019.

 "[T]ypicality and commonality are similar and tend to merge." *Dukes v. Wal–Mart, Inc.*, 509 F.3d 1168, 1184 (9th Cir. 2007). "Commonality examines the relationship of facts and legal issues to class members, while typicality focuses on the relationship of facts and issues between the class and its representatives." *Id.* at n. 12. The questions of fact common to all class members include whether:

- Defendants' selection of such investment options was affected by serious and ongoing conflicts of interest;
- The Plan was required to bear excessive fees;
- The Plan's underperformance impaired the assets of the Plan's unitary trust;
- Defendants' alleged concealment of their fiduciary misconduct rendered participants incapable of protecting their interests in the Plan.

The common legal questions include:

- Defendants' joint and several liability for improper self-dealing and conflicts of interest;
- Defendants' joint and several liability for the imprudent selection of investment options;
- Defendants' joint and several liability for inclusion of investment options that paid excessive fees to FIA;
- The effect of Defendants' alleged fraudulent concealment to disclose all material information to Plan participants;
- Whether, in administering the Plan, Defendants exercised the requisite care, skill, prudence and diligence;
- Whether FIA must disgorge the fees it received as a result of fiduciary misconduct, conflicts of interest, and self-dealing.

These common questions of law and fact are sufficient to satisfy the permissive requirements of Rule 23(a). Defendants urge that the Court deny class certification because individualized damage inquiries will dwarf the liability inquiry. Specifically, Bechtel asserts that "excessive fee" and "non-disclosure" claims are necessarily individualized and incapable of class-wide proof. Defendants further argue that any calculation of damages will require a comparison of individual accounts and the hypothetical value of the Plan, assuming Defendants have not caused any injury to its assets.

 Defendants' argument is unpersuasive because it asks the Court to probe beyond the class certification analysis and into the merits of Plaintiffs' case. "Although some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the class certification stage." *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir.1983) (citation omitted); *see also Nelson v. United States Steel Corp.*, 709 F.2d 675, 679–80 (11th Cir. 1983) (plaintiffs' burden at class certification "entails more than the simple assertion of [commonality and typicality] but less than a prima facie showing of liability") (citation omitted). Plaintiffs' evidence is sufficient to make a preliminary showing that Defendants breached their fiduciary duties in a manner that caused harm to the Plan's assets. Plaintiffs present common questions of fact and law that satisfy the commonality requirement.

Defendants further contend that class certification is inappropriate here because the Bechtel Plan is a defined contribution plan, as opposed to a defined benefits plan. A defined benefits plan promises the participant a fixed level of retirement income, whereas a defined contribution plan promises the participant the value of an individual account at retirement, which is largely a function of the amounts contributed and the performance of those contributions.

To this end, Defendants suggest that the Supreme Court's recent decision in *LaRue v. DeWolff, Boberg & Associates, Inc.*, —— U.S.

——, 128 S.Ct. 1020, 169 L.Ed.2d 847 (2008) has changed the landscape of ERISA claims in a manner pertinent to the class certification inquiry. *LaRue* dealt with an individual suit brought by a participant in a 401(k) plan. The plaintiff alleged that his employer failed to follow his directions for making changes to investments in his individual plan account, resulting in losses. *Id.* at 1021–22. The Supreme Court held that an individual participant's claim was cognizable under ERISA § 502(a)(2), authorizing suits to enforce fiduciary obligations. *Id.* at 1026.

Defendants urge that *LaRue* brought into question the propriety of class certification in § 502(a)(2) cases. Under their analysis, a class action alleging a breach of fiduciary duty cannot be sustained in the individual plan context because the loss caused to each account would be specific to that person's investment strategy. Defendants' argument reads too much into the *LaRue* analysis. Before *LaRue*, recovery under ERISA § 502(a)(2) was recognized to be on behalf of a plan—individuals could not recover for their own losses. *See Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96. *LaRue* did not overrule that widely-accepted tenet of ERISA law. Recognizing that defined contribution plans had become more prevalent, *LaRue* simply expanded the relief available under § 502(a)(2), so that recovery can now be had when a participant demonstrates that fiduciary misconduct affected his individual account. *Id.* at 1025–26; *see also Bendaoud v. Hodgson*, 578 F.Supp.2d 257, 2008 WL 4335884 (D.Mass.2008) ("Of course, a fiduciary's breaches can affect more than one defined contribution plan participant. In that situation, though, the proper approach is joinder of the affected participants or the certification of a class.").

Defendants further contend that how any recovery will be returned to individual Plan participants makes class certification inappropriate because participants chose different investment options. This inquiry, however, is beyond the proper scope of certifying the class. "If the Plaintiffs recover any damages on behalf of the Plan, it will be up to the Plan administrator to determine how those damages are to be distributed." *Ronald C.*

*Tussey, et al. v. ABB, Inc., et al.*, No. 06–04305–CV, slip copy, 2007 WL 4289694, *5 (W.D.Mo. Dec. 3, 2007). Here, the common focus is on the conduct of Defendants: whether they breached their fiduciary duties to the Plan as a whole by paying excessive fees, whether they made imprudent investment decisions, and whether they concealed information from all Plan participants. Plaintiffs' claims do not focus on injuries caused to each individual account, but rather on how the Defendants' conduct affected the pool of assets that make up the Master Trust.

Furthermore, Defendants' assertion of ERISA § 404(c)'s "safe harbor" defense does not defeat Plaintiffs' showing of commonality. That section, titled "Control over assets by participant or beneficiary," provides, in pertinent part,

(1)(A) In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if participant or beneficiary exercises control over the assets in his account (as determined under regulations of the Secretary [of Labor] )—

(i) such participant or beneficiary shall not be deemed to be a fiduciary by reason of such exercise, and

(ii) no person who is otherwise a fiduciary shall be liable under this part or any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control[.]

29 U.S.C. § 1104(c).

Section 404(c) is an affirmative defense that must be proven, and is not an appropriate basis to deny class certification. *See In re Aquila ERISA Litig.*, 237 F.R.D. 202, 213 (W.D.Mo.2006); *Tussey*, 2007 WL 4289694, *5 n. 2. Furthermore, the existence of a § 404(c) affirmative defense is an issue shared by many members of the class. *See Lively v. Dynegy, Inc.*, 2007 WL 685861, *10 (S.D.Ill. Mar. 2, 2007). Defendants' reliance on *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299 (5th Cir.2007), is misplaced. There, the court reversed certification because the district court had failed to give any consideration to the "safe harbor"

defense. The *Langbecker* court did not find that § 404(c) issues actually precluded certification, it just remanded to the district court to determine, in the first instance, whether the defense would "undermine the feasibility of class action treatment." *Id.* at 313.

Defendants owed identical fiduciary duties to all members of the proposed class with respect the Plan. Because this case involves Defendants' conduct as to all participants in the Plan, Rule 23's "commonality" requirement is satisfied.

## C. *Typicality*

In examining typicality, courts consider "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992) (internal quotation marks omitted). Like commonality, typicality is a "permissive" standard and "the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D.Cal.2005) (internal quotation marks omitted).

Here, Plaintiffs allege that Defendants breached their fiduciary duties against the Plan as a whole and against every participant in the Plan. Plaintiffs assert the same injury arising from the same course of conduct including, inter alia, allowing excessive fees, misleading participants, and maintaining imprudent investments. Although the losses attributable could differ from participant to participant, individual damages should not defeat typicality.

In light of the representative nature of a suit filed pursuant to ERISA § 502(a)(2) and the injunctive relief sought pursuant to § 502(a)(3), Plaintiffs' claims are sufficiently typical of those of other class members. *See, e.g., In re Syncor ERISA Litig.*, 227 F.R.D. 338, 344 (C.D.Cal.2005) (finding typicality in § 502(a)(2) suit because "each of the plaintiffs was a Syncor employee and participated in the Plan during the class period").

The discussion above outlining the common questions of law and fact also applies to the Court's typicality inquiry. If Plaintiffs' claim is successful, all class members suffered the same injury through the same course of conduct. None of the facts or legal claims are unique to the named Plaintiffs. The complaint is based on allegations and recovery that address the Plan as a whole, not individual claimants. If recovery is received and paid to the Plan, it is the responsibility of the Plan fiduciaries to determine the manner in which such recovery will be applied. The "typicality" prong is therefore satisfied.

## D. *Adequacy of Representation*

Rule 23(a)(4) requires that the class representatives must "fairly and adequately protect the interests of the class." In determining adequacy of class representation, the Court considers two factors. First, the Court must analyze whether any conflicts of interest exist between the named plaintiffs and the class members. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Second, the Court should consider whether the named Plaintiffs' counsel will adequately protect the interests of the class. *Dukes*, 474 F.3d at 1233.

A named plaintiff does not need to have special knowledge of the case or possess a detailed understanding of the legal or factual basis on which a class action is maintained. *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966). "Because class representatives serve as a guardian of the interests of the class, the representatives must have some minimal familiarity with the litigation, although a detailed understanding of the theories and facts of the case is not required." *In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 649–50 (N.D.Cal.2007) (internal citations omitted). Defendants argue that Kanawi and Aquino are inadequate because they lack familiarity with the case and are mere pawns of Plaintiffs' attorneys. Yet both have been deposed twice and have demonstrated familiarity with the underlying theory of the case: that Defendants acted imprudently as guardians of the Plan's assets.

*See* Kanawi Dep. 36:16–23; Aquino Dep. 31:12–25.

Defendants' reliance on *Bodner v. Oreck Direct, LLC,* No. 06–7456, 2007 WL 1223777 (N.D.Cal. Apr. 25, 2007) is to no avail. In *Bodner,* the plaintiffs alleged breach of warranty and other claims against the manufacturer of dysfunctional air purifiers. *Id.* at *1. The plaintiffs' counsel had been the subject of controversy in a past case regarding its relationship to named plaintiffs, and had the same claims previously dismissed in another court. *Id.* at *1–2. To revive the claims, counsel recruited a new plaintiff. *Id.* at *1. Noting the plaintiffs' "undeniable and overwhelming ignorance regarding the nature of this action," Judge Patel refused to certify the class. *Id.* at *2. The circumstances here are not comparable. There is no similar air of impropriety surrounding Schlichter's conduct, and the named plaintiffs have demonstrated that they are familiar with what this case is about.

The named plaintiffs have the incentive to maximize the recovery of the Plan because their assets will be affected. Despite Plaintiffs' lack of knowledge regarding the intricacies of 401(k) plans, they are not antagonistic to putative class members and have demonstrated that they are willing to protect the interests of the Class through qualified counsel. *See Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.,* 222 F.3d 52, 61–62 (2d Cir.2000); *George v. Kraft Foods Global, Inc.,* 251 F.R.D. 338, 351 (N.D.Ill.2008) (noting that it is "not surprising that [plaintiffs] cannot articulate the nature of their claims since ERISA is a complicated area of the law" in certifying class where plaintiffs were found through a newspaper ad). Kanawi and Aquino have demonstrated their commitment to this action and a willingness to act as a class representative. Furthermore, even if Plaintiffs did not have reason to suspect that there were problems with the Plan before contacting counsel, that is simply the nature of a claim of this type. The average person would have no reason to believe that the administrator of his 401(k) plan was acting imprudently, particularly when a substantial part of the allegations involve the concealment of material information.

The law firm representing the class, Schlichter, Bogard & Denton is also qualified to represent the class. Before the Court are experienced attorneys dedicated to litigating ERISA class action cases of this scope and complexity. *See* Schlichter Decl. ¶¶ 3–5; Ex. A. The firm has been designated as class counsel in similar breach of fiduciary duty cases. *See, e.g., Tussey,* 2007 WL 4289694. The "adequacy" prong is satisfied because Plaintiffs and counsel are well-equipped to represent the class.

In sum, all of the Rule 23(a) requirements are met.

## II. *Rule 23(b) Requirements*

Most ERISA class action cases are certified under Rule 23(b)(1). *See, e.g., Lively,* 2007 WL 685861; *Simpson,* 231 F.R.D. at 396. Rule 23(b)(1) provides certification where:

> prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed.R.Civ.P. 23(b)(1). Rule 23(b)(1)(A) considers possible prejudice to a defendant, while 23(b)(1)(B) looks to prejudice to the putative class members. Here, Plaintiffs satisfy Rule 23(b)(1)(A). Plaintiffs allege that more than 17,000 individuals are or have been members of the Plan. Thus, there are over 17,000 potential plaintiffs who could individually file suit for damages arising from the same conduct. This would create a risk of "inconsistent and varying" adjudications, resulting in "incompatible standards of conduct" for Defendants. *See Alvidres v. Countrywide Financial Corp.,* No. CV–07–5810, 2008 WL 1766927 (C.D.Cal.2008). In light of this risk, Plaintiffs have successfully satisfied the requirements of Rule 23(b)(1)(A). Moreover, Defendants concede that "[i]n the event

the Court certifies a class, it should be certified under Rule 23(b)(1)." *See* Defs.' Opp. at 15. "ERISA [fiduciary] litigation ... presents a paradigmatic example of a(b)(1) class." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y.2004) (internal quotation marks omitted).

### III. *Scope of the Class*

Plaintiffs seek to certify a class that includes "[a]ll persons ... who are or were participants or beneficiaries of the Plan and who are, were or may have been affected by the conduct described in this Complaint, as well as those who will become participants or beneficiaries of either Plan in the future." Defendants argue that this class is "grossly overbroad."

 Defendants first take issue with the inclusion of future class members on the basis that their potential claims are not ripe for judicial determination. Courts may find the standing requirement is satisfied when a suit seeks injunctive relief against conduct that could cause future injuries. *See* 1 H. Newberg, Newberg on Class Actions § 3:7 (4th ed.2002); *but see Minority Police Officers Ass'n of South Bend v. City of South Bend*, 555 F.Supp. 921, 924 (N.D.Ind.1983) (holding that future plan members do not satisfy the case or controversy requirement of Article III standing). The Court has the discretion to exclude future class members if there is no need to include them in the class because future members will have the benefit of any injunctive relief awarded. *See Selzer v. Board of Educ. of City of New York*, 112 F.R.D. 176 (S.D.N.Y.1986). Here, Defendants do not yet owe any duties to future Plan members, so it would be premature to say they have breached those duties. Moreover, Plaintiffs' request for injunctive relief would address the impact any alleged problem would have on future Plan participants. Accordingly, future Plan participants are excluded from the class.

Defendants further contend that the class period should begin no earlier than September 11, 2000 because ERISA § 413 contains a six-year statute of limitations for breach of fiduciary duty suits. *See* 29 U.S.C. § 1113. Yet, in the TAC, Plaintiffs make allegations of fraud and concealment, which could act to toll the statute of limitations. *See* TAC, ¶¶ 78, 79, 80, 87. It would be premature for the Court to make a determination on the merits of the tolling claim at this point in the litigation. *See Taylor v. United Tech. Corp.*, No. 06–CV–1494, slip copy, 2008 WL 2333120 (D.Conn.2008).

## CONCLUSION

Based on the foregoing, the Court GRANTS Plaintiff's Renewed Motion for Class Certification under Rule 23(b)(1)(A), and appoints the named Plaintiffs as class representatives. The Court also designates Plaintiffs' law firm, Schlichter, Bogard & Denton, as Class Counsel pursuant to Rule 23(g). The class is defined as:

> All persons, *excluding the Defendants and/or other individuals who are or may be liable for the conduct described in the Third Amended Complaint*, who are or were participants or beneficiaries of the Plan and who are, were or may have been affected by the conduct set forth in the Third Amended Complaint.

**IT IS SO ORDERED.**