**In re FIRST AMERICAN CORP. ERISA LITIGATION.**

**No. SACV 07–1357 JVS (RNBx).**

United States District Court, C.D. California.

July 27, 2009.

---

Bryan King Sheldon, Christopher Kim, Lisa J. Yang, Lim Ruger and Kim, Cheryl A. Williams, Jeff S. Westerman, Michiyo M. Furukawa, Sabrina S. Kim, Milberg LLP, Michael D. Braun, Braun Law Group, Los Angeles, CA, Donna Siegel Moffa, Edward W. Ciolko, James A. Maro, Joseph H. Meltzer, Joseph A. Weeden, Katherine B. Bornstein, Mark K. Gyandoh, Barroway Topaz Kessler Meltzer & Check LLP, Radnor, PA, Arvind Khurana, Lori G. Feldman, Sara E. Fuks, Milberg LLP, Robert I. Harwood, Samuel K. Rosen, Harwood Feffer LLP, New York, NY, Eric L. Palmquist, Robert A. Izard, Schatz and Nobel, Hartford, CT, Mark Peter Kindall, Izard Nobel LLP, West Hartford, CT, for Plaintiffs.

James Patrick Baker, Marla K. Letellier, Jones Day, San Francisco, CA, Richard S. Ruben, Jones Day, Irvine, CA, for Defendants.

Jennifer J. Sosa, Milberg LLP, New York, NY.

ORDER RE MOTION TO CERTIFY CLASS AND FOR REVIEW OF MAGISTRATE JUDGE'S MINUTE ORDER

JAMES V. SELNA, District Judge.

Plaintiffs Denise Rogers ("Rogers"), Jennifer Easton ("Easton"), and David Hillert ("Hillert") (collectively, the "Plan Partici-

pants") seek class certification pursuant to Federal Rule of Civil Procedure 23. Defendants The First American Corporation ("First American"), et al. (collectively, the "First American Defendants") oppose, and move the Court to reverse Magistrate Judge Robert N. Block's (the "Magistrate Judge's") March 25, 2009 Minute Order (the "Minute Order") as to certain requests for production, or, alternatively, to stay the Minute Order. The Plan Participants' motion for class certification is DENIED, and the First American Defendants' motion to reverse the Minute Order is GRANTED IN PART AND DENIED IN PART.

## I. *Background*

The Plan Participants are participants in or beneficiaries of the First American 401(k) retirement savings plan (the "Plan"), which is an "employee pension benefit plan" within the meaning of the Employee Retirement Income Security Act ("ERISA"). The Plan is a defined contribution plan, in which participants have individual accounts and select their investment fund from a variety of available options.

The Plan Participants' consolidated complaint rests on the theory that the First American Defendants breached their fiduciary duties under ERISA by failing to prudently and loyally manage the Plan's investment in the First American common stock fund (the "Fund") by, inter alia, (1) continuing to offer the Fund as a Plan investment option when it was imprudent to do so; (2) maintaining the Plan's preexisting heavy investment in the Fund when First American stock was no longer a prudent investment; and (3) investing the Plan's assets in the Fund when First American stock was not a prudent investment.

The Plan Participants primarily seek relief under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), which permits a plan participant to bring an action under ERISA § 409, 29 U.S.C. § 1109. Section 409 provides that a plan fiduciary who breaches his duty shall be personally liable to "make good to such plan any losses to the plan resulting from each such breach...." 29 U.S.C. § 1109(a).

In *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 140, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the Supreme Court emphasized that the text of § 409(a) characterizes the relevant fiduciary relationship as one "with respect to a plan," and repeatedly identifies the "plan" as the victim of any fiduciary breach. The Court concluded that "[a] fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id.* at 142, 105 S.Ct. 3085. The Supreme Court in *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248, 128 S.Ct. 1020, 169 L.Ed.2d 847 (2008), later recognized that, in the defined contribution plan context, a plaintiff may also recover for an injury to his individual plan under § 502(a)(2).

This ERISA action is alleging breach of fiduciary duties that affected all participants in the Plan, rather than a single individual account. The Plan Participants move to certify the following class: "All persons who were participants in or beneficiaries of the ... Plan, at any time between April 1, 2006 and the present (the 'Class Period') and whose Plan accounts included investments in First American stock." [1] They seek certification under Rule 23(a) and (b)(1).

The Plan Participants have also sought merits-based discovery for this ERISA action. On October 7, 2008, they propounded sixty-seven production requests. The Magistrate Judge's Minute Order partly granted their motion on March 25, 2009. First American now challenges twelve of these requests.

---

1. The Plan Participants initially moved to certify a class broader than the one alleged in the complaint. (*Compare* Compl. ¶ 48, with Mot. Br. 1 ("All participants in or beneficiaries of the Plan, at any time between April 11, 2006 and the present [the 'Class Period'], whose Plan accounts included investments in shares of First American Corporation common stock and/or a fund invested in First American common stock.").) After oral argument, the Plan Participants subsequently agreed to narrow "the scope of the proposed Class to be consistent with that ... in the Consolidated Complaint," as set forth above. (Supp'l Mot. Br. 1 n. 1.)

Presently before this Court are both the Plan Participants' motion for class certification, as well as the First American Defendants' motion to reverse the Minute Order. The Court considers each motion in turn.

## II. *Motion to Certify Class*

### A. *Legal Standard*

A motion for class certification involves a two-part analysis. First, the Plan Participants must demonstrate that the proposed class satisfies the requirements of Rule 23(a): (1) the members of the proposed class must be so numerous that joinder of all claims would be impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of absent class members; and (4) the representative parties must fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a).

Second, the Plan Participants must meet the requirements of at least one of the subsections of Rule 23(b). Here, the Plan Participants contend that they qualify under Rule 23(b)(1), which allows for certification if prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications and establish incompatible standards for defendants, or when a judgment in one suit would be dispositive of the interests of the other class members who were not parties to the suit. Fed. R.Civ.P. 23(b)(1).

■ The Plan Participants must offer facts sufficient to satisfy the requirements of Rule 23(a) and (b). *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1308–09 (9th Cir. 1977). In turn, this Court must conduct a rigorous analysis to determine whether the prerequisites of Rule 23 have been met. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). While the Court's analysis must be rigorous, Rule 23 confers "broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." *Armstrong v. Davis*, 275 F.3d 849, 872 n. 28 (9th Cir.2001).

In *Falcon*, the Supreme Court reiterated the well-recognized precept that "'the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Falcon*, 457 U.S. at 160, 102 S.Ct. 2364 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)). Nevertheless, there is "nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

### B. *Discussion*

The Court takes up the threshold issue of standing before turning to the requirements under Rule 23.

#### 1. *Standing*

■ The First American Defendants initially oppose class certification because the Plan Participants lack Article III standing, as they cannot show a loss traceable to the First American Defendants. Without standing, the First American Defendants assert, the Plan Participants cannot serve as class representatives.

■ To prove standing, the Plan Participants must show (1) an injury in fact; (2) a causal connection between the injury and the actions complained of; and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561, 112 S.Ct. 2130. Only the first two elements—loss and causation—are at issue here.

■ Although the Plan Participants bear the burden of establishing their standing, "'[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice.'" *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d

832, 838 (9th Cir.2007) (quoting *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130) (alteration in original). Therefore, because substantial merits-based discovery has yet to begin,[2] the Plan Participants may show standing through the allegations in their consolidated complaint.

In resolving a prior motion to strike the First American Defendants' expert report, the Court has already noted that the First American Defendants' standing arguments are based on a securities analysis inapplicable to the ERISA context. (Docket No. 148, at 5.) Under the proper ERISA framework, the Plan Participants clearly allege both loss and causation. *See Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1026–27 (9th Cir.2009) ("[Loss is] the difference between the benefit [the plaintiff] received and what he would have received if the Plans' assets had been prudently invested."); *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1099 (9th Cir.2004) (" '[A] plaintiff must show a causal link between the failure to investigate and the harm suffered by the plan.' ") (quoting *Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir.1995)) (alteration in original); *see also Kuper*, 66 F.3d at 1460 ("In order to establish this causal link, a plaintiff must demonstrate that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident.").

The Plan Participants allege loss to the extent that they allege that the First American Defendants knew or should have known that First American stock was "artificially inflated," and thus an imprudent investment, because to pay the artificially inflated price would "inevitably result in significant losses to the Plan." (Compl.¶¶ 10, 174, 191.) The Plan Participants allege causation to the extent they allege that, "[h]ad Defendants properly discharged their fiduciary duties, including the provision of full and accurate disclosure of material facts concerning First American stock and divesting the Plan from Company Stock offered by the Plan when such investment became imprudent, the Plan would have avoided losses suffered as a result of imprudent investment in the Fund, as opposed to the returns they would have achieved with alternative prudent investments offered in the Plan." (*Id.* ¶ 223; *see also id.* ¶¶ 222, 224–26.)[3] Nothing more is required at this time,[4] and the First American Defendants' arguments against standing are to no avail insofar as they rely on the Kleidon Declaration, which the Court has stricken in its entirety. (Docket No. 148, at 7.)

Accordingly, at this stage of litigation, the Plan Participants have standing to serve as class representatives.

### 2. *Rule 23(a) Requirements*

The proposed class satisfies all four of the Rule 23(a) requirements, i.e., numerosity, commonality, typicality, and adequacy of representation.

### i. *Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Here, the Plan had approximately 37,000 participants, a significant number of whom invested in the Fund. The First American Defendants do not contest that numerosity is satisfied.

### ii. *Commonality*

Rule 23(a)(2) requires that questions of law or fact be common to the class. This requirement is permissively construed. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core

---

2. *See* discussion *infra* Section III.B.

3. The Court has made related observations when ruling on a prior motion. (Docket No. 79, at 4, 11.)

4. *Cf. Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1040 n. 3 (9th Cir.2004) ("Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.") (ellipsis in original) (internal quotation marks omitted).

of salient facts coupled with disparate legal remedies within the class." *Id.*

 "[T]ypicality and commonality are similar and tend to merge." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1184 (9th Cir. 2007). "Commonality examines the relationship of facts and legal issues to class members, while typicality focuses on the relationship of facts and issues between the class and its representatives." *Id.* at n. 12. Here, the questions of law and fact common to all class members include:

- Whether the First American Defendants are fiduciaries of the Plan;

- Whether the First American Defendants breached their fiduciary obligations to the Plan and its participants by failing to prudently and loyally manage the Plan's assets when they knew or should have known that First American stock was not a prudent investment for the Plan;

- Whether the First American Defendants breached their fiduciary duties by failing to ensure that monitored fiduciaries had access to complete and accurate information concerning First American's financial problems that they knew or should have known rendered First American stock an imprudent investment;

- Whether the First American Defendants breached their fiduciary duties by failing to avoid conflicts of interest;

- Whether the First American Defendants breached their fiduciary duties by failing to provide complete and accurate information to Plan participants regarding investment in First American stock and First American's business improprieties; and

- Whether, as a result of the First American Defendants' fiduciary breaches, the Plan and its participants and their beneficiaries suffered losses.

These common questions of law and fact are sufficient to satisfy the permissive requirements of Rule 23(a). The First American Defendants do not contest that commonality is satisfied.

### iii. *Typicality*

 In examining typicality, the Court considers "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted). Like commonality, typicality is a "permissive" standard and "the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D.Cal.2005) (internal quotation marks omitted).

Here, the First American Defendants contend that there is no typicality because the Court will need to analyze whether each putative class member in fact exercised "independent control," as defined by ERISA § 404(c), over their participant-directed transactions. The Court disagrees.

 Section 404(c) is an affirmative defense that must be proven, and is not an appropriate basis to deny class certification. *See Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 109 (N.D.Cal.2008); *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 213 (W.D.Mo.2006). Moreover, the existence of this defense is an issue shared by many members of the class. As in *Lively v. Dynegy, Inc.*,

> the Court fails to see why the defense would be unique to [the Plan Participants'] claims and would not instead apply to the claims of all of the members of the proposed class, given that it is clearly [the First American] Defendants' position in this case that they bear no responsibility for the Plan losses at issue here in light of the control Plan participants exercised over the investment of their accounts in [First American] stock.

No. 05–CV–00063–MJR, 2007 WL 685861, at *10 (S.D.Ill. Mar.2, 2007). The First American Defendants' reliance on *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299 (5th Cir.2007), is also misplaced. As the court in *Kanawi* explained,

the [*Langbecker*] court reversed certification because the district court had failed to give any consideration to the 'safe harbor' defense. The *Langbecker* court did not find that § 404(c) issues actually precluded certification[;] it just remanded to the district court to determine, in the first instance, whether the defense would 'undermine the feasibility of class action treatment.'

254 F.R.D. at 109–10 (quoting *Langbecker*, 476 F.3d at 313). Further, "the *Langbecker* court ultimately upheld the lower court's finding that the plaintiffs' claims were typical of those of the putative class." *Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 353 (N.D.Ill. 2007).

To the extent the First American Defendants allege that the § 404(c) defense "will almost certainly become a focus of the litigation," this possibility does not preclude class certification. (Opp'n Br. 17.) At a minimum, "whether the Plan falls under § 404(c) is subject to disagreement between the parties, and that issue is not properly before the Court on a motion for class certification." *Lively*, 2007 WL 685861, at *11 n. 5 (internal quotation marks omitted).

The discussion above outlining the common questions of law and fact also applies to the typicality inquiry here. *See Dukes*, 509 F.3d at 1184. If the Plan Participants' claim is successful, all class members suffered the same injury through the same course of conduct. None of the facts or legal claims are unique to the named plaintiffs. This action is brought on behalf of the Plan as a whole, not individual claimants. If recovery is received and paid to the Plan, it is the responsibility of the Plan fiduciaries to determine the manner in which such recovery will be applied. *Kanawi*, 254 F.R.D. at 109, 110.

Accordingly, the typicality requirement is satisfied.

#### iv. *Adequacy of Representation*

■ Rule 23(a)(4) requires that the class representatives must "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). In determining adequacy of class representation, the Court considers (1) whether any conflicts of interest exist between the named plaintiffs and the class members, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); and (2) whether the named plaintiffs' counsel will adequately protect the interests of the class, *Dukes*, 474 F.3d at 1233.

As to the first consideration, the First American Defendants contend that the Plan Participants cannot fairly and adequately protect the interests of the class due to "insurmountable intra-class conflicts." (Opp'n Br. 14.) Because it relies heavily on the stricken Kleidon Declaration,[5] this contention is without support. As such, it amounts to mere speculation over conflicts of interest, which is to no avail here. *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir.2003) ("[T]his circuit does not favor denial of class certification on the basis of speculative conflicts.").

■ The First American Defendants also contend that the Plan Participants are inadequate class representatives because they lack familiarity with the basic elements of this ERISA action and appear to have "abdicated all responsibility in the litigation to their counsel." (Opp'n Br. 18.) There is

---

5. In part, the Kleidon Declaration is based on the flawed premise that the Plan Participants "have conflicting interests concerning the date on which to allege the [First American] stock fund became an imprudent investment option for the Plan," essentially because each "would have an incentive to choose the date when his or her subsequent losses were greatest." (Kleidon Decl. ¶ 80.) As noted in a previous order (Docket No. 148), courts have roundly rejected this premise for class certification purposes, as in *In re Aquila ERISA Litig.*:

While it may be true that each Plan participant who invested in the Company Stock Fund has

an 'optimal prudence date,' this fact alone does not defeat [Plaintiff's] typicality. This is so because, it is also true that the Plan has a single 'optimal imprudence date,' and as this lawsuit is brought on behalf of the Plan, individual participants' 'optimal imprudence dates' are irrelevant.

237 F.R.D. 202, 210 (W.D.Mo.2006) (alteration in original); *see also In re Merck & Co., Inc. Secs., Derivative & ERISA Litig.*, MDL No. 1658(SRC), 2009 WL 331426, at *14 (D.N.J. Feb.10, 2009); *Brieger*, 245 F.R.D. at 355; *Lively*, 2007 WL 685861, at *13.

no merit to this claim here. Notwithstanding the fact that a named plaintiff does not need to have special knowledge of the case or possess a detailed understanding of the legal or factual basis on which a class action is maintained, *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 373, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966), there is at least some evidence that the Plan Participants are knowledgeable about and prepared to prosecute this action. (Kim Decl., Ex. A at 49–50, 200; Ex. B at 7, 87–88, 90–91; Ex. C at 22–24, 52, 61–62, 67–68, 71–72, 114.) In any event, whatever unfamiliarity exists, it does not rise to the level of abdication to counsel.[6]

As to the second consideration, the First American Defendants do not dispute that the Plan Participants "have retained qualified, experienced attorneys with broad-based, multi-jurisdictional experience in complex class action litigation, especially in the context of breach of fiduciary duty cases under ERISA." (Mot.Br.10.) The Court finds that counsel will adequately protect the interests of the class.

**6.** *Compare Moeller v. Taco Bell Corp.,* 220 F.R.D. 604, 612 (N.D.Cal.2004) ("Adoption of defendant's position would convert the class action into a device usable only by individuals with such a degree of sophistication that they would be capable of acting as their own attorneys.") (internal quotation marks omitted), *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.,* 209 F.R.D. 159, 165 (C.D.Cal.2002) ("[P]laintiffs have at least a rudimentary understanding of the nature of the present action and they have a demonstrated willingness to assist counsel in the prosecution of the litigation."), *Williams Corp. v. Kaiser Sand & Gravel Co., Inc.,* 146 F.R.D. 185, 188 (N.D.Cal.1992) ("In complex litigation, a class representative need not have first hand knowledge of all of the details of his or her suit."), with *Burkhalter Travel Agency v. MacFarms Int'l, Inc.,* 141 F.R.D. 144 (N.D.Cal. 1991) (noting that the proposed class representative in a price-fixing suit against a macadamia nut company had, in effect, "alarming unfamiliarity" with the suit and was not be able to comply with fiduciary duties owed to the class), *Kelley v. Mid–Am. Racing Stables, Inc.,* 139 F.R.D. 405, 409–10 (W.D.Okla.1990) (finding that the securities fraud plaintiffs abdicated all duties to their attorneys), and *In re Cirrus Logic Sec.,* 155 F.R.D. 654, 659 (N.D.Cal.1994) (observing that one securities fraud plaintiff had abdicated his responsibilities to counsel, knew nothing of the case, and had acted as lead plaintiff in thirteen other securities suits).

**7.** At oral argument, the First American Defendants contended that, at a minimum, the second

Accordingly, the adequacy requirement is satisfied.[7]

**3.** *Rule 23(b)*

Most ERISA class action cases are certified under Rule 23(b)(1). *See, e.g., Kanawi,* 254 F.R.D. at 111; *Simpson,* 231 F.R.D. at 396. Rule 23(b)(1) provides certification where

> prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed.R.Civ.P. 23(b)(1). "Rule 23(b)(1)(A) considers possible prejudice to a defendant,

claim for misrepresentation could not be certified under Rule 23(a) and (b). But the law of this circuit is distinguishable from the First American Defendants' cited cases. *Compare Barker v. Am. Mobil Power Corp.,* 64 F.3d 1397, 1403 (9th Cir.1995) ("[An ERISA] fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information."), and *Farr v. U.S. West Commc'ns, Inc.,* 151 F.3d 908, 914 (9th Cir.1998), *as amended,* 179 F.3d 1252 (9th Cir. 1999) (quoting *Barker* and holding that the employer had breached its fiduciary duty by withholding information about the potential negative tax consequences of accepting an early retirement incentive), with *In re Schering–Plough Corp. Erisa Litig.,* No. 03–1204(KSH), 2008 WL 4510255, at *10 (D.N.J. Jan.31, 2008) ("The Third Circuit has consistently held that proof of individual detrimental reliance is a necessary element of an individual ERISA § 502(a)(3) disclosure claim."), and *In re Electronic Data Systems Corp. "ERISA" Litig.,* 224 F.R.D. 613, 630 (E.D.Tex.2004) ("In the context of a breach-of-fiduciary-duty suit for misrepresentations about a benefits plan's potential changes, the Fifth Circuit adopted a fact-specific approach to determine whether the alleged misrepresentations were material."). In any event, this point is moot insofar as none of the claims may be certified under Rule 23(b), as set forth below.

while 23(b)(1)(B) looks to prejudice to the putative class members." *Kanawi*, 254 F.R.D. at 111. Here, the Plan Participants purport to satisfy Rule 23(b)(1)(A). As of December 31, 2006, the Plan had approximately 37,000 participants. (Mot. Br. 5 n. 3.) Thus, according to the Plan Participants, there are over 37,000 potential plaintiffs who could individually file suit for damages arising from the same conduct, which risks "inconsistent and varying" adjudications resulting in "incompatible standards of conduct" for the First American Defendants. *See Alvidres v. Countrywide Fin. Corp.*, No. CV–07–5810, 2008 WL 1766927 (C.D.Cal.2008). Given this risk, the Plan Participants appear to have satisfied the requirements of Rule 23(b)(1)(A).

The First American Defendants' reliance on *LaRue* is unavailing on this point. As this Court has previously indicated,

> the Supreme Court in *LaRue* did not hold that participants in a defined contribution plan cannot bring suit on behalf of the plan. To the contrary, the Court reaffirmed that " § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries," but that this provision nonetheless "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." Thus, far from precluding the Plan Participants from bringing this action on behalf of the plan, the *LaRue* Court merely rejected the position that only a plan, and not an individual, could be an aggrieved party under § 502(a)(2).

(Docket No. 148, at 7, citation omitted.) This reading of *LaRue* is shared by a number of other courts. *See, e.g., Kanawi*, 254 F.R.D. at 109; *Bendaoud v. Hodgson*, 578 F.Supp.2d 257, 266 (D.Mass.2008) ("[Where] a fiduciary's breaches can affect more than one de-

fined contribution plan participant ..., the proper approach is joinder of the affected participants or the certification of a class.").

Significantly, the Plan Participants do not seek recovery on their own behalf, but on behalf of the Plan.[8] There is nothing in *LaRue* to prevent the Plan Participants from doing so.[9]

However, the Court finds that controlling Ninth Circuit authority precludes class certification under Rule 23(b)(1)(A) to the extent that the Plan Participants primarily seek monetary relief. Both in their opposition and in their supplemental briefing, the First American Defendants cite *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180 (9th Cir.2001), *as amended*, 273 F.3d 1266 (9th Cir.2001), for this proposition. *Zinser* was a products liability case in which the plaintiff, Robin Zinser, filed a lawsuit asserting products liability, medical monitoring, and other claims as to allegedly defective pacemaker components. *Id.* at 1184. She sought class certification for a subclass of patients who were still implanted with the defective pacemaker. *Id.* at 1185. This subclass sought to force the defendant to establish a medical monitoring fund. *Id.* at 1194. The district court rejected certification of the subclass under Rule 23(b)(1)(A). *Id.* at 1186. The Ninth Circuit affirmed, holding that "the medical monitoring claim *primarily* seeks monetary damages." *Id.* at 1193 (emphasis supplied). The court reasoned that "Rule 23(b)(1)(A) certification requires more ... than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts." *Id.* (internal quotation marks omitted). As a result, the court said, "[c]ertification under Rule 23(b)(1)(A) is therefore not appropriate in an action for damages." *Id.* (citing *Green v.*

---

8. *Compare* Reply Br. 16 ("Plaintiffs are litigating whether Defendants are liable to the Plan for breaches of their fiduciary duties. Proof sufficient to establish liability will not vary at all from class member to class member.") (emphases omitted), with *Alvidres*, 2008 WL 1766927, at *3 ("Plaintiff alleges that more than 40,000 individuals are members of the Plan. Thus, there are over 40,000 potential Plaintiffs who could individually file suit for damages arising from the same conduct. This would create a risk of 'in-

consistent and varying' adjudications, resulting in 'incompatible standards of conduct' for Defendants. In light of this risk, Plaintiff has successfully satisfied the requirements of Rule 23(b)(1)[A].").

9. Indeed, the Ninth Circuit has recently held that even a former plan participant could bring suit. *Harris v. Amgen, Inc.*, 573 F.3d 728, 734–35 (9th Cir.2009).

*Occidental Petroleum Corp.*, 541 F.2d 1335, 1340 (9th Cir.1976), and *McDonnell Douglas Corp. v. U.S. District Court*, 523 F.2d 1083, 1086 (9th Cir.1975)).

Here, the Plan Participants primarily seek monetary damages; damages to the Plan, and demands that the First American Defendants make the Plan whole, are the primary focus of this action. (Compl., Prayer for Relief.) As such, *Zinser* is controlling and is not meaningfully distinguishable from this case.

Accordingly, given the Ninth Circuit's holding in *Zinser*,[10] this Court cannot certify the proposed class under Rule 23(b)(1)(A).[11]

▮ In the alternative, the Plan Participants move to certify the class under Rule 23(b)(1)(B). Class actions are permitted under Rule 23(b)(1)(B) if separate actions "inescapably will alter the substance of the rights of others having similar claims." *McDonnell*, 523 F.2d at 1086. For a number of constitutional reasons, the Supreme Court has "counsel[ed] against adventurous application of Rule 23(b)(1)(B)." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999). The Court thus proceeds with caution, and agrees with the First American Defendants that *LaRue* cures any concern that the potential class members' claims would essentially be disposed of by this litigation. In *LaRue*, the Supreme Court determined that participants in a defined contribution plan, such as the Plan here, could bring ERISA § 502(a)(2) claims on their own behalf. 128 S.Ct. at 1026. Because the putative class members have an individual remedy, they can pursue relief on their own behalf.[12] Moreover, under usual preclusion rules, the defeat of an individual Plan participant's claim could not adversely affect the individual claim of any other Plan participant. *Blonder–Tongue Laboratories, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329–30, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

Accordingly, certification is not appropriate under Rule 23(b)(1), and the Court must deny the Plan Participants' motion for class certification.

### III. *Motion for Review of Magistrate Judge's Minute Order*

The Court now turns to the First American Defendants' motion to reverse portions of the Magistrate Judge's Minute Order.

#### A. *Legal Standard*

▮ A magistrate judge's findings on non-dispositive discovery matters can be modified or set aside if it is found to be "clearly erroneous" or "contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); L.R. 72–2.1; *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1414 (9th Cir.1991). The district court must affirm the magistrate judge's order unless the district court is left with the

---

**10.** Although certification for a Rule 23(b)(1) class "may be appropriate even when monetary damages are involved," *Molski v. Gleich*, 318 F.3d 937, 949 (9th Cir.2003), *Zinser* is still controlling under Rule 23(b)(1)(A) where the plaintiffs "primarily" seek monetary damages.

**11.** The Court's ruling moots the First American Defendants' contention at oral argument that they could defeat a Rule 23(b)(1)(A) class by simply waiving the protection against unconnected rulings. The Court is not persuaded by this view. "Although some courts interpret Rule 23(b)(1)(A) as protecting defendants only, *clearly all litigants as well as the courts benefit from consistency in the adjudication of claims of individual class members.*" *Ingles v. City of New York*, No. 01 Civ. 8279(DC), 2003 WL 402565, at *7 (S.D.N.Y. Feb.20, 2003) (emphasis supplied); *accord Humphrey v. United Way of Tex. Gulf Coast*, Civil Action No. H–05–0758, 2007 WL 2330933, at *11 (S.D.Tex. Aug.14, 2007). More-

over, among the cases cited by the First American Defendants, a number allowed defendants to waive Rule 23(b)(1)(A) protections where no risk of varying adjudications or incompatible standards of conduct existed. *See, e.g., Corley v. Entergy Corp.*, 222 F.R.D. 316, 320 (E.D.Tex. 2004) ("[T]he potential harm addressed by Rule 23(b)(1)(A) is absent from this case."); *Alsup v. Montgomery Ward & Co.*, 57 F.R.D. 89, 91–92 (N.D.Cal.1972) ("In the present case the Court is of the opinion that there is no danger that the defendant will be faced with incompatible standards of conduct and that such risks are 'imaginary.'").

**12.** The First American Defendants belatedly apprise this Court of *In re Computer Sciences Corp. ERISA Litigation*, No. 08–02398 (C.D.Cal. Sept.2, 2008), as a supplemental authority against class certification here. (Docket No. 170, Ex. A.) Even so, the Court finds the analysis in *Computer Sciences* persuasive here.

"definite and firm conviction that a mistake has been committed." *Burdick v. Comm'r*, 979 F.2d 1369, 1370 (9th Cir.1992).

### B. *Discussion*

The First American Defendants move to reverse portions of the Minute Order that compel them to produce documents responsive to twelve requests for production. Because the Court is not firmly convinced that the Magistrate has committed error, much less clear error contrary to law, the motion is denied, with one exception set forth below.

### 1. *Requests Nos. 47–49, 52–59*

First American challenges Request Nos. 47–49 and 52–59 on several grounds.

Request No. 47 seeks "[a]ll documents produced to any governmental authority by any Defendant as part of any criminal, civil, or regulatory investigation of First American's real estate appraisal or title insurance businesses." (Req. for Prod. No. 47.) Request Nos. 48 and 49 seeks all documents produced by First American in two separate securities cases. (Req. for Prod. Nos. 48 & 49.) Request Nos. 52–59 seeks all documents, without limitation, turned over to the United States, as well as New York, Michigan, Washington, California, Minnesota, and Florida in connection with enumerated investigations. (Req. for Prod. Nos. 52–59.)

The Court is convinced that the rationale for these requests is legally sound, but has some concern about the practical scope of the requested production.

■ The First American Defendants first contend that these requests are overbroad and duplicative of Request No. 42, which asks for all documents prepared by or sent to or from the fiduciary defendants concerning investigations into First American's title insurance or appraisal businesses. The Court disagrees. Request No. 42 requests documents pertaining to the First American Defendants' knowledge, whereas the challenged requests seek documents pertaining to what the First American Defendants should have known through a reasonably diligent investigation. As the First American Defendants effectively concede, documents turned over to entities investigating First American's appraisal and title insurance business would not necessarily have been sent to individual Plan fiduciaries. (Mot.Br.9.)

■ The First American Defendants next contend that these requests seek documents that have no nexus to fiduciary conduct and, therefore, would not lead to relevant evidence. The Court once again disagrees. The rationale for the challenged requests appears in the Joint Stipulation:

> Plaintiffs must be afforded a meaningful opportunity to review Defendants' conduct, including the conduct relating to and stemming from First American's title insurance business practices and those of its subsidiary, eAppraiseIt. This evidence is relevant under Rule 26(b)(1), as it would demonstrate that Defendant-fiduciaries knew or *should have known that [First American] stock was an imprudent investment*, and yet, continued to offer [First American] stock as [an] investment option in the Plan in violation of their fiduciary duties.

(Joint Stip., Baker Decl., Ex. B at 49, emphasis supplied.) Notwithstanding this fact, the First American Defendants assert that relevance in this case is limited to discovering what the fiduciaries knew, because the Plan Participants' only theory of relevance is "what knowledge, if any, the fiduciaries possessed regarding the alleged unlawful business practices." (Mot.Br.6, 7–8.) As indicated by the Joint Stipulation above, this is factually incorrect. Moreover, as a matter of law, fiduciaries can be liable for breach of their fiduciary duties even if they did not know of First American's malfeasance, so long as they could have known about it had they acted "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character with like aims." 29 U.S.C. § 1104(a)(1)(B); *accord In re Syncor ERISA Litig.*, 516 F.3d 1095, 1103 (9th Cir.2008).

Accordingly, even if Plan fiduciaries did not review documents produced in investigations, those documents may perhaps establish corporate mismanagement and malfea-

sance, and may aid the Plan Participants in showing that a prudent fiduciary in the First American Defendants' position would have been able to learn about mismanagement and malfeasance through a reasonably diligent investigation.[13]

■ The First American Defendants further contend that, at minimum, these requests must be limited to the relevant time period. The Minute Order compels the First American Defendants to produce documents relating to governmental investigations dating back to April 11, 2001, five years prior to the beginning of the proposed Class Period. The Plan Participants do not directly address this point in their opposition. They do, however, include a reference to *Rogers v. Baxter,* No. 04–cv–6476, slip op. at 2 (N.D.Ill. Feb. 9, 2007), attached as Exhibit A to the Kindall Declaration. In pertinent part, the *Rogers* court noted as follows:

> Plaintiff alleges that Defendants violated ERISA by imprudently offering Baxter common stock as an investment option in Baxter's retirement plan from January 1, 2001 to the present. Baxter's growth and earnings forecasts for 2003, as investigated by the SEC, fall within this time period and are proper subjects of discovery under Rule 26.

*Id.* Far from justifying the production of documents antedating the inception of the Class Period by five years, the *Rogers* opinion suggests that production should be cabined to the relevant Class Period. Coupled with the fact that the Plan Participants' own production request only asked for documents from January 1, 2006 to the present, and the

fact that the consolidated complaint alleges that First American stock became imprudent no earlier than April 11, 2006, the Court is left with the firm conviction that a mistake has been committed in this respect.

Accordingly, the Court limits the relevant time period to documents from April 11, 2006 to the present.

■ Finally, the First American Defendants contend that Request No. 47, in particular, is unduly burdensome because it would require First American to make inquiries of its subsidiaries. Because "parties objecting to a magistrate judge's order may not present affidavits containing evidence not presented below," *Paramount Pictures Corp. v. Replay TV,* No. CV 01–9358 FMC (Ex), 2002 WL 32151632, at *1 (C.D.Cal. May 30, 2002) (citing *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137–38 (2d Cir.1994)),[14] this objection is improper to the extent it is predicated on evidence not before the Magistrate Judge. The First American Defendants contend that some evidence of the company's decentralized record-keeping system was before the Magistrate Judge, but concede that the "additional details highlighted in the Davis Declaration" were not presented to the Magistrate Judge. (Mot. Br. 11 n. 4.)[15] Thus, the Court may not consider the Davis Declaration, without which the undue burden claim has little merit. Even assuming that some evidence of decentralization was properly before the Magistrate Judge, the Court is not persuaded that the Magistrate Judge clearly erred in this regard.[16]

■ However, the Court finds that the scope of discovery is too far reaching given

---

13. In the reply brief, the First American Defendants contend that Plan fiduciaries have a duty to investigate only when there is a "red flag" of misconduct. (Reply Br. 4, citing *Pugh v. Tribune Co.,* 521 F.3d 686, 700–01 (7th Cir.2008).) But this objection misses the point. The Plan Participants seek discovery of these documents precisely to find such red flags of misconduct. This objection also begs the question insofar as it assumes that "Request No. 47 is not reasonably designed to lead to [the discovery of evidence that the First American Defendants should have known that First American stock was imprudent] since it is, by design, a catch-all request untailored to retrieve any specific documents." (Reply Br. 4.)

14. The First American Defendants contend that some courts allow parties objecting to a magis-

trate judge's nondispositive ruling to supplement the record. (Reply Br. 5, citing *Empire Gas Corp. v. Am. Bakeries Co.,* 646 F.Supp. 269, 275 (N.D.Ill.1986).) The Court declines to follow these precedents, which are inconsistent with the highly deferential review standard in the Ninth Circuit.

15. In the reply brief, the First American Defendants further concede that the Magistrate Judge "did not have the benefit of certain facts that demonstrate the extent of the burden that Request No. 47 would impose on First American." (Reply Br. 5.)

16. To be sure, a corporation should not be insulated from discovery simply because, without more, it is large and has chosen a decentralized

the sheer number of government agencies that would be implicated under Request No. 47. (Docket No. 178.) At oral argument, the Court requested that the First American Defendants provide the Court with a list of governmental agencies investigating First American. They submitted a list showing various agencies from more than forty states and eighty-six federal and state agencies in toto. The Court suspects that some investigations are likely to prove de minimis in terms of identifying material deficiencies in the First American Defendants' discharge of their duties, and that where deficiencies have been material, the conduct is likely to have drawn the attention of multiple agencies.

Accordingly, the Plan Participants are directed to limit Request No. 47 to twenty-five agencies of their choice, in addition to any agency specified by name in another request. The Plan Participants may apply for additional production of other agencies upon a showing that there is a reasonable likelihood that production will lead to non-duplicative discoverable materials.

### 2. Request No. 61

The First American Defendants contend that Request No. 61 is overbroad and should be narrowed through additional "meet and confer." Request No. 61 calls for the names and last known contact information of every eAppraiseIT employee during the Class Period. (Req. for Prod. No. 61.)

The First American Defendants analogize this request to the one denied in *Prouty v. National Railroad Passenger Corp.*, 99 F.R.D. 545, 549 (D.D.C.1983), in which the court found "that the names of Amtrak employees are not relevant to plaintiff's suit and that the individuals' privacy interests outweigh plaintiff's interests." [17] However, the

Court is once again not persuaded that there has been a clear error. This objection is improper to the extent it is predicated on the Feldman Declaration, which was not before the Magistrate Judge. In any event, the First American Defendants do not argue that the requested information is irrelevant or unduly burdensome, and the Court agrees that the request is reasonably calculated to lead to the discovery of admissible evidence. There is no merit to the First American Defendants' claim that this request is somehow premature.

However, at oral argument, the parties stipulated to narrow the scope of Request No. 61 to employees who serve an appraisal function, and employees who oversee those serving such a function. This request is thus limited along these lines.

Accordingly, because the Court is not firmly convinced that the Magistrate Judge has committed a clear error contrary to law, save in one respect related to the date of documents, the Minute Order is affirmed. The Court also declines to stay this action pending resolution of a summary judgment motion the First American Defendants have yet to file.

### IV. Conclusion

For the foregoing reasons, the Court DENIES the Plan Participants' motion for class certification. The First American Defendants' motion to reverse the Minute Order is GRANTED IN PART AND DENIED IN PART, as set forth above.

IT IS SO ORDERED.

---

organizational structure. But, in the reply brief, the First American Defendants insist that the Plan Participants should not be permitted to " 'demand[ ] millions of pages of documents concerning every aspect of [First American's] relationships with [regulators], only a fraction of which could be deemed relevant to the subject matter of [plaintiffs'] fraud claim.' " (Reply Br. 6, quoting *Nugget Hydroelectric, L.P. v. Pacific Gas and Elec. Co.*, 981 F.2d 429, 438 (9th Cir.1992).) The cited authority, however, made this observation to conclude that "[t]he magistrate had adequate grounds to determine that most of the requested documents fall outside the scope of

discovery articulated in Federal Rule of Civil Procedure 26(b)(1)." *Nugget*, 981 F.2d at 438. Here, the Magistrate Judge determined that the requested documents were within the scope of Rule 26(b)(1), and, as discussed above, the Court is not firmly convinced that the Magistrate Judge erred in that determination. Nor is the Court convinced that a cost-benefit analysis of discovery clearly favors the First American Defendants.

**17.** Any valid privacy concern can be dealt with by way of protective order.